THE ATTORNEY GENERAL OF THE STATE OF NEW YORK
BUFFALO REGIONAL OFFICE

---

In the Matter of the Investigation by
Eric T. Schneiderman, Attorney General of the
State of New York of Linda Strumpf

AOD # 11- 021

---

## ASSURANCE OF DISCONTINUANCE
## PURSUANT TO EXECUTIVE LAW
## SECTION 63(15)

Pursuant to the provisions of Executive Law §63(12) and General Business Law (GBL) Article 22-A, Eric T. Schneiderman, Attorney General of the State of New York ("OAG") caused an inquiry to be made into a business called Serves You Right ("SYR"), a process serving company. SYR served process for plaintiffs represented by Linda Strumpf, Attorney at Law ("Strumpf"). As a result of the inquiry into SYR, the OAG caused an inquiry to be made into the matters served by SYR on behalf of Strumpf's clients that culminated in the entry of a default judgment by the courts of the state of New York. Based upon this inquiry, the OAG makes the following findings:

### FINDINGS OF THE ATTORNEY GENERAL

1. Strumpf, with her New York office located at 2 West Road, South Salem, New York 10590, is a lawyer who, among other things, represents creditors and debt buyers before the courts of New York State.

2. Serves You Right, Inc. ("SYR") was a domestic for-profit corporation located at 30 South Ocean Avenue, Suite #302, Freeport, New York 11520-3550.

3. SYR was in the business of serving legal process in New York State and marketed its services to law firms that commence a high volume of debt collection actions.

4. On behalf of Strumpf's clients, SYR process servers served summonses and complaints or notices of petition or orders to show cause and petitions (referred to

I

collectively as "complaint" or "process").

5. Strumpf usually sent the complaints in batches to SYR for it to serve upon the defendants.

6. Generally, SYR process servers served process by one of three methods.

7. Process servers delivered the complaint within New York State to the defendant personally. See CPLR § 308(1). This method is referred to herein as "actual service."

8. Process servers delivered the complaint "within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailed the complaint by first class mail to the person's last known residence or actual place of abode. See CPLR § 308(2). This method of service is referred to herein as "substitute service."

9. Where the service could not be made with due diligence by actual service, or substitute service, SYR affixed the complaint "to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" and mailed the complaint by first class mail to the person's last known residence or actual place of abode. See CPLR § 308(3). This method of service is referred to herein as "nail-and-mail service." While CPLR § 308(3) does not define the term "due diligence," typically courts have required three prior attempts at service made on separate days, at various times during the day, before a plaintiff may resort to nail-and-mail service.

10. SYR maintained a database on which it recorded, among other things, (i) the date it received complaints to be served, (ii) the date complaints were filed with the court, (iii) the date and time of all service attempts and actual service, and (iv) the method of service used. The OAG, with the Internal Audit Unit of the Unified Court System, conducted an investigation of SYR, including a review of its database and made the following findings.

11. From January 2007 through September 2009, SYR claimed to have served process on more than 35,000 occasions and prepared affidavits of service for each one.

12. On more than 800 occasions, SYR process servers swore to affidavits that indicated that they had made service attempts at multiple addresses at precisely the same time. This is physically impossible.

13. On a repeated and persistent basis, SYR servers swore to affidavits in which they claimed to have made service attempts that were physically impossible given the time between service attempts and the distances involved. For example, on July 5, 2008, a SYR process server claimed to have served, or attempted to serve, 34 individuals between 9:15 a.m. and 9:59 p.m. According to Google maps, the server would have needed to travel 3,253 miles on that day to have completed those service attempts.

14. On more than 80 occasions, SYR process servers swore to affidavits in which they claimed to have made service or service attempts prior to the summons and complaint being filed in court. This is physically impossible.

15. On at least one occasion, an SYR process server claimed to have made personal service upon an individual who had died more than three weeks before she was allegedly served.

16. Thus, the OAG determined that, when it prepared affidavits of service in nail and mail cases, SYR process servers persistently and repeatedly falsified service attempts. The OAG sued SYR and it was shut down by court order filed on August 19, 2010.

17. From January 1, 2007 through September 30, 2009, Strumpf used SYR to serve papers on approximately 4,020 occasions.

18. Of those occasions, SYR utilized substituted or nail and mail service to serve legal process on approximately 2,562 of occasions.

19. In a majority of the law suits referred to in paragraph 18 above, the

3

consumer defaulted and Strumpf, on behalf of her clients, sought and obtained default judgments pursuant to CPLR § 3215. Because the actions were for sums certain, the default applications were made to, and routinely granted by, the appropriate county or court clerk.

20. On a repeated and persistent basis, in support of her motions for default judgments, Strumpf submitted affidavits of service prepared by SYR in which the process server falsified service attempts. The OAG does not make the finding that Strumpf was aware that SYR had falsified affidavits of service. As such, this Assurance of Discontinuance does not constitute a finding by the OAG of any wrongdoing or liability on the part of Strumpf of any wrong doing, or an admission by Strumpf of any wrong doing or liability.

21. Nevertheless, Strumpf obtained default judgments against consumers who were not properly served pursuant to CPLR § 308, and submitted affidavits of service that falsified service attempts.

**IT NOW APPEARING THAT** Strumpf desires to settle and resolve the investigation without admitting or denying the OAG's findings, the OAG and Strumpf hereby enter into this Assurance of Discontinuance pursuant to Executive Law §63(15).

## AGREEMENT

22. **IT IS AGREED AND UNDERSTOOD** that, within 30 days of execution of the Assurance of Discontinuance ("Assurance"), Strumpf, or any firm which has been substituted as counsel (referred to collectively as "Strumpf"), will designate a partner, member, shareholder, associate, employee or agent who shall serve as "administrator" and who will be responsible for carrying out all of the activities required by this Assurance and will provide the name of the "administrator" to the OAG, provided that Strumpf will notify the OAG within five business days where a firm is substituted as counsel.

23. **IT IS FURTHER AGREED AND UNDERSTOOD** that for purposes of this Assurance, the following definitions shall apply:

4

a. The term "action" shall refer to actions and proceedings.

   b. The term "complaint" shall refer to a summons and complaint, or notice of petition or order to show cause and petition.

   c. The term "plaintiff" shall refer to plaintiffs on whose behalf a default judgment was entered in an action filed on or after January 1, 2006, and that judgment was based on a complaint served by SYR, pursuant to CPLR § 308(4).

   d. The term "defendant" shall refer to defendants and respondents.

   e. Exhibit A shall mean (i) the notice letter and affidavit and stipulation and (ii) the insert recommending that defendants who are Spanish speakers seek a translation of the notice letter and affidavit and stipulation, and notifying defendants of organizations that may be available to provide them with assistance including, for example, the Unified Court System Help Centers, the Civil Court Help Centers and organizations that are funded by the Legal Services Corporation and the IOLA Fund of the State of New York.

24. **IT IS FURTHER AGREED AND UNDERSTOOD** that Strumpf is reasonably relying upon the list provided by the OAG from the Unified Court System of those actions in which SYR represented to Strumpf that it served a complaint on a plaintiff.

25. **IT IS FURTHER AGREED AND UNDERSTOOD** that, within 120 days of execution of this Assurance, Strumpf will identify all actions involving plaintiffs as identified in Paragraph 23(c) above, excluding actions in which:

   a. The defendant appeared personally or by an attorney;

   b. The defendant answered the complaint;

   c. The defendant paid part or all of the judgment, but not including defendants from whom such payment(s) was taken, or made, from the funds of an account in any banking institution within sixty (60) days after a restraint was placed upon said account and such defendant had not made a payment on the judgment previous to such restraint; provided that the OAG may request the basis on which Strumpf, or the plaintiff in the underlying action, determined that a payment made by a defendant within 60 days after a restraint was placed on a bank account did not, in fact, come from funds in the restrained account;

   d. The defendant has made payments under an income execution for a total of 12 consecutive or non-consecutive months;

5

e. The defendant was served by the New York State Secretary of State;

f. The defendant has a pending or closed bankruptcy proceeding unless Strumpf is aware that the closed bankruptcy proceeding was dismissed by the bankruptcy court;

g. The defendant entered into a written stipulation to settle an action, but not including defendants who entered into such stipulation within sixty (60) days after a restraint was placed upon the funds of an account in any banking institution, provided this provision shall not extend to defendants who originally entered into such written stipulation prior to said restraint being placed upon the account;

h. The defendant is deceased;

i. The default judgment has been previously vacated;

j. The defendant has received or obtained a satisfaction of judgment.

26. **IT IS FURTHER AGREED AND UNDERSTOOD** that, within 120 days of execution service of this Assurance, Strumpf will notify the OAG of the name and address of each client, or former client, for whom she obtained default judgments in actions identified pursuant to paragraph 25 above who will not permit Strumpf to bind it to the process set forth in this Assurance, which notification shall include the name and index number of each action to which the client was a party.

27. **IT IS FURTHER AGREED AND UNDERSTOOD** that, with the exception of actions for which a plaintiff has not agreed to be bound by the provisions of this Assurance as set forth in paragraph 26 above, within 150 days of the execution of this Assurance, Strumpf will send by first class mail the notice and affidavit and stipulation (referred to collectively as the "mailing"), annexed hereto as Exhibit A, to each defendant in actions identified pursuant to paragraph 25 above to the defendant's last known address in an envelope that will have as the return address of Strumpf, but not the name of the firm on the envelope, which mailing shall not constitute a communication by Strumpf for the purposes of the 15 U.S.C. § 1692 *et seq.*,

commonly referred to as the Fair Debt Collection Practices Act.

28. **IT IS FURTHER AGREED AND UNDERSTOOD** that, where a mailing is returned to Strumpf by the United States Postal Service ("USPS") as undeliverable within one year of mailing, Strumpf will, within 30 days of such return, take additional steps permitted by law to identify the address of the defendant, including a review of the database maintained by Accurint, or another similar database mutually agreed to by the parties, which review shall satisfy this paragraph, and resend the mailing required by paragraph 27 above, and the accomplishment of this review will fulfill the notification requirements of the Assurance and Strumpf will have no further obligations regarding mail returned as undeliverable.

29. **IT IS FURTHER AGREED AND UNDERSTOOD** that, within 180 days of execution of this Assurance, Strumpf will furnish the OAG with an attorney affirmation or affidavit attesting to her compliance with paragraphs 25 – 28 above, including a list of defendants to whom the mailing was sent and when, which affirmation or affidavit shall be sufficiently detailed and shall include as attachments documents reasonably necessary for the OAG to determine that Strumpf is complying with the Assurance.

30. **IT IS FURTHER AGREED AND UNDERSTOOD** that, if within one year of execution of this Assurance, a defendant for whom the mailing was returned by the USPS as undeliverable, seeks to have a judgment vacated, Strumpf will send to the defendant the mailing described in paragraph 27 above; provided that Strumpf shall not be required to re-send a mailing pursuant to this paragraph if it is returned as undeliverable.

31. **IT IS FURTHER AGREED AND UNDERSTOOD** that, when a defendant returns the sworn affidavit and stipulation to Strumpf, postmarked within 60 days of the date of mailing, Strumpf will, within 30 days of receipt, deliver by first class mail to the appropriate clerk for filing the stipulation to vacate the default judgment, pursuant to CPLR § 5015(b), on notice to the defendant by first class mail, and Strumpf will arrange for an immediate cessation of any

collection activities on such judgment.

32. **IT IS FURTHER AGREED AND UNDERSTOOD** that the affidavit and stipulation shall provide that the failure of a defendant who actually received the mailing to return the sworn affidavit and stipulation postmarked within 60 days of the aforesaid mailing shall constitute a waiver, relinquishment and abandonment of any right to seek to have a judgment vacated pursuant to this Assurance; if a defendant fails to return the sworn affidavit postmarked within 60 days after the aforesaid mailing, such failure shall constitute a waiver, relinquishment and abandonment by such defendant of any right to have the judgment vacated pursuant to this Assurance.

33. **IT IS FURTHER AGREED AND UNDERSTOOD** that defendants who did not receive a mailing solely because an action was filed before January 1, 2006 may request in writing the mailing and Strumpf shall send it within ten business days of such request by first class mail, provided that the email or written request must be sent or postmarked within one year of the date of execution of this Assurance, and Strumpf, in response to an oral request for the mailing will, within five business days of such request made within the same one year period, send to the defendant by first class mail a form on which to request receipt of the mailing.

34. **IT IS FURTHER AGREED AND UNDERSTOOD** that the affidavit and stipulation shall provide that where a judgment is vacated, Strumpf and/or the plaintiff will not be required to return amounts previously paid, provided, tendered, collected or otherwise obtained from the defendant unless and until Strumpf and/or the plaintiff fail to re-serve the defendant within 120 days of the date the judgment is vacated, or, plaintiff is ordered to do so following a final disposition of the action.

35. **IT IS FURTHER AGREED AND UNDERSTOOD** that the affidavit and stipulation shall provide that, where a judgment is vacated, (i) the defendant agrees that the plaintiff or Strumpf may re-serve the complaint, within 120 days of the date the judgment is

8

vacated, by certified mail, return receipt requested, and first class mail, to the address identified by the defendant on the affidavit and stipulation, or in any other manner permitted by law; (ii) that the defendant will agree to claim the certified mail; and (iii) that the defendant will file a change of address form with the United States Postal Service in the event that the defendant changes residence after submitting the affidavit and stipulation, and keep such change of address order current.

36. **IT IS FURTHER AGREED AND UNDERSTOOD** that, where an action is re-served pursuant to paragraph 35 above, the defendant will have 45 days from the date of mailing within which to answer, and the parties thereto may take any actions or make any motions permitted by the CPLR, including the application for a default judgment if the defendant fails to answer.

37. **IT IS FURTHER AGREED AND UNDERSTOOD** that a stipulation vacating the default judgment shall not be considered as a dismissal of the action, or a stipulation of settlement or voluntary discontinuance, and the existing index number and request for judicial intervention or similar docket number(s) which have been purchased, or otherwise exist in the original action, shall be considered valid.

38. **IT IS FURTHER AGREED AND UNDERSTOOD** that the affidavit and stipulation shall provide that any defendant who seeks to vacate a judgment under the terms of this Assurance must agree (i) to waive, relinquish and abandon any and all claims against the plaintiff and Strumpf for any and all actions, claims, suits, controversies and demands either in law or equity arising out of the activities and conduct of SYR; (ii) that the action will be deemed to have been brought on the date on which it was originally filed; and (iii) in no event shall the failure of the plaintiff in the underlying action to re-serve process pursuant to the provisions herein within 120 days of the filing of the action serve as a basis to dismiss the action pursuant to CPLR § 306-b.

39.     **IT IS FURTHER AGREED AND UNDERSTOOD** that the affidavit and stipulation shall provide that failure to re-serve process within 120 days of the date the judgment is vacated will result in forfeiture of any right to do.

40.     **IT IS FURTHER AGREED AND UNDERSTOOD** that the affidavit and stipulation shall provide that, when a judgment is vacated, and the plaintiff in the underlying action does not re-serve process in a timely manner, Strumpf and plaintiff shall, within 150 days of the date the judgment was vacated, return to the defendant the monies paid on the judgment, provided that Strumpf shall only be responsible for the monies she received as fees paid to her for services rendered, and plaintiff shall bear responsibility for monies received as collection on the judgment, and neither plaintiff nor Strumpf shall bear responsibility to return fees paid to a sheriff or marshal to enforce the judgment pursuant to CPLR §§ 8011 and 8012.

41.     **IT IS FURTHER AGREED AND UNDERSTOOD** that all pending applications for default judgments where SYR served process pursuant to CPLR § 308(4) shall be subject to the terms and conditions of this Assurance, and Strumpf and/or plaintiffs will withdraw such applications, send the mailing required by paragraph 27 above, and otherwise proceed in accordance with all of the other relevant provisions of this Assurance.

42.     **IT IS FURTHER AGREED AND UNDERSTOOD** that nothing in this Assurance shall be construed to prevent the consideration of pending applications for default judgments where SYR served process by means other than CPLR § 308(4), nor shall this Assurance be construed as evidence that Strumpf or plaintiffs abandoned such applications or failed to prosecute them.

43.     **IT IS FURTHER AGREED AND UNDERSTOOD** that, for two years after execution of this Assurance, or until this Assurance is fully complied with, whichever is shorter, Strumpf will provide to the OAG on a quarterly basis the following data:

   a. Defendants for whom a judgment is vacated and the amount of the

judgment;

    b. Defendants whom she re-serves and the date and method of service; and

    c. Defendants who receive a return of funds paid on the default judgment and the amount thereto.

44. **IT IS FURTHER AGREED AND UNDERSTOOD** that, where the reporting obligation described in paragraph 43 above terminates before this Assurance is fully complied with, Strumpf agrees to provide to the OAG, at its reasonable request, such information necessary for it to determine compliance with the Assurance which is not subject to any legal or ethical prohibition against disclosure.

45. **IT IS FURTHER AGREED AND UNDERSTOOD** that Strumpf will provide any notice, report and/or any other communication required pursuant to this Assurance to the Office of the Attorney General, Attn: James M. Morrissey, Assistant Attorney General, 350 Main Street, Suite 300A, Buffalo, New York 14202.

46. **IT IS FURTHER AGREED AND UNDERSTOOD** that Strumpf will make earnest efforts to comply with the timelines herein but may expand any of the timelines by written agreement with the OAG.

47. **IT IS FURTHER AGREED AND UNDERSTOOD** that, before the OAG seeks relief to cure an alleged violation of this Assurance, it will provide Strumpf with ten days written notice of the same, including a description of the alleged violation, to give Strumpf an opportunity to cure the alleged violation.

48. **IT IS FURTHER AGREED AND UNDERSTOOD** that this Assurance, and the Exhibit hereto, (i) may not be used as evidence in any judicial or administrative hearing, proceeding or action except for a proceeding by the OAG to enforce its terms; (ii) does not create duties or obligations to third persons not a party to this litigation, except as explicitly set forth herein; and (iii) creates no liability or responsibility from Strumpf or the plaintiffs to any third

11

party based on compliance with any term, condition or provision of this Assurance, other than as explicitly set forth herein; it being the expressed intent of the OAG and Strumpf that compliance with this Assurance shall not constitute a violation of 15 U.S.C § 1692 *et seq.*, commonly referred to as the Fair Debt Collection Practices Act, 18 U.S.C. § 1961 *et seq.*, commonly referred to as the Racketeer Influenced and Corrupt Organization Act, or N.Y. General Business Law, Articles 22-A and 29-H.

49. **IT IS FURTHER AGREED AND UNDERSTOOD** that the OAG has agreed to the terms of this Assurance based on, among other things, the representations made to OAG by the signatories hereto and their counsel and the OAG's own factual investigation as set forth in Findings (1)-(21) above. To the extent that any material representations are later found to be inaccurate or misleading, this Assurance is voidable by the OAG in its sole discretion.

50. **IT IS FURTHER AGREED AND UNDERSTOOD** that no representation, inducement, promise, understanding, condition, or warranty not set forth in this Assurance has been made to or relied upon by Strumpf.

51. **IT IS FURTHER AGREED AND UNDERSTOOD** that Strumpf shall not take any action or make any statement denying, directly or indirectly, the propriety of this Assurance or expressing the view that this Assurance is without factual basis. Nothing in this paragraph affects her (i) testimonial obligations or (ii) right to take legal or factual positions in defense of litigation or other legal proceedings to which OAG is not a party. This Assurance is not intended for use by any third party in any other proceeding and is not intended, and should not be construed, as an admission of liability by Strumpf.

52. **IT IS FURTHER AGREED AND UNDERSTOOD** that this Assurance may not be amended except by an instrument in writing signed on behalf of all the parties to this Assurance.

53. **IT IS FURTHER AGREED AND UNDERSTOOD** that this Assurance shall

be binding on and inure to the benefit of the parties to this Assurance and their respective successors and assigns, provided that no party, other than OAG, may assign, delegate, or otherwise transfer any of their rights or obligations under this Assurance without the prior written consent of OAG.

54. **IT IS FURTHER AGREED AND UNDERSTOOD** that, in the event that any one or more of the provisions contained in this Assurance shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

55. **IT IS FURTHER AGREED AND UNDERSTOOD** that, to the extent not already provided under this Assurance, Strumpf shall, upon request by OAG, provide all documentation and information necessary for OAG to verify compliance with this Assurance.

56. **IT IS FURTHER AGREED AND UNDERSTOOD** that acceptance of this Assurance by OAG shall not be deemed approval by OAG of any of the practices or procedures referenced herein, and Strumpf shall make no representation to the contrary.

57. **IT IS FURTHER AGREED AND UNDERSTOOD** that all correspondence to the Attorney General shall be delivered or mailed to the following address:

> Office of the Attorney General of the State of New York
> Attn: James M. Morrissey, Assistant Attorney General
> 350 Main Street, Suite 300A
> Buffalo, New York 14202

58. **IT IS FURTHER AGREED AND UNDERSTOOD** that nothing contained in this Assurance shall be construed to limit the rights of a person or an entity who is not a party to this Assurance with respect to any of the matters contained herein. Notwithstanding the foregoing, in no event shall this Assurance be construed to limit the rights of Strumpf in connection with any action commenced by any party other than the OAG.

59. **IT IS FURTHER AGREED AND UNDERSTOOD** by Strumpf that,

13

pursuant to Executive Law § 63(15), in the event of any violation of this Assurance, the Attorney General may commence an action or proceeding, under General Business Law Article 22-A and Executive Law § 63(12).

60. **IT IS FURTHER AGREED AND UNDERSTOOD** by Strumpf that, should the OAG prove in a court of competent jurisdiction that a breach of this Assurance by Strumpf has occurred, Strumpf shall pay to OAG the cost, if any, of such determination and of enforcing this Assurance, including without limitation legal fees, expenses, and court costs.

61. **IT IS FURTHER AGREED AND UNDERSTOOD** that the OAG finds the relief and agreements contained in this Assurance appropriate and in the public interest. The OAG is willing to accept this Assurance pursuant to New York Executive Law Section 63(15), in lieu of commencing a statutory proceeding. This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

**IN WITNESS WHEREOF**, the undersigned subscribe their names.

Dated: Buffalo, New York
April 21, 2011

By: _____
LINDA STRUMPF, ESQ.

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By: _____
JAMES M. MORRISSEY, Of Counsel