UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAIGE MARIE SNYDER, fka
THOMAS A. SNYDER,                         Plaintiff,

-vs-

U.S. EQUITIES CORP., LINDA STRUMPF,
HAL SIEGAL, RON WEST, ALEX SHAFRAN,
WING LAM, JOHN DOE,
                                          Defendants.

_____

DECISION AND ORDER

12-CV-6092 CJS

## INTRODUCTION

This is an action purporting to assert claims under the Fair Debt Collection Practices Act ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), New York General Business Law § 349, and New York Judiciary Law § 487. The action also purports to assert a New York common-law claim for malicious prosecution. Now before the Court is Defendants' motion to dismiss. The application is granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint in this action and from documents in the underlying state-court litigation,[1] and are presumed to be true. The events leading up to this action began more than ten years ago. Generally, Plaintiff maintains that Defendants, based upon false affidavits, obtained a default judgment against her for a consumer debt that she did not owe. Plaintiff subsequently persuaded a New York state court to vacate the judgment. Plaintiff now seeks to maintain a class action against defendants on the grounds that they similarly obtained fraudulent default judgments against

_____

[1]It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited as to what it can consider. *See, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep.24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").

other persons.

More specifically, on or about September 4, 2003, Plaintiff received a dunning letter from defendant attorney Linda Strumpf, Esq. ("Strumpf"), sent on behalf of her client, defendant U.S. Equities Corp. ("U.S. Equities"), which is a debt collection agency.  Plaintiff maintains that U.S. Equities is owned by Strumpf's husband, defendant Hal Siegal ("Siegal"), who uses the alias Ron West ("West"), and that defendant Wing Lam ("Lam") is the CEO of U.S. Equities.  In connection with Strumpf's representation of U.S. Equities, she employed various process servers, including defendant Alex Shafran ("Shafran").  The dunning letter indicated that Strumpf and U.S. Equities were attempting to collect a debt that Plaintiff had incurred to Citifinancial.  Plaintiff informed U.S. Equities that she did not owe such a debt.

Subsequently, unbeknownst to Plaintiff, Strumpf commenced a collection action on behalf of U.S. Equities against Plaintiff in New York State Supreme Court, Wayne County. In June 2004, Strumpf obtained a default judgment against Plaintiff, based in part on an affidavit from Shafran, in which he falsely swore that he had served Plaintiff with process. Strumpf also filed an affidavit  from Lam, in which he falsely indicated that Plaintiff owed the aforementioned debt.

However, Shafran never actually served Plaintiff, and Plaintiff had no notice of the lawsuit or judgment until January 21, 2011, when she received an information subpoena in connection with Strumpf's and U.S. Equity's attempt to collect on the judgment.   The information subpoena, dated January 11, 2011, bore the caption and index number of the state court action, and indicated, in pertinent part, that on June 22, 2004, a judgment had been  entered against Plaintiff, in favor of U.S. Equities, in the amount of $13,768.30. Scher Aff. [#11], Ex. 3.  Upon receiving the information subpoena, Plaintiff telephoned Strumpf's office, spoke with Ron West, and "insisted that she did not owe the alleged debt." Complaint [#1] at ¶ 45.  During the conversation, West admitted to Plaintiff that he did not have "any documentation" concerning the alleged debt. *Id.*  Subsequently, Plaintiff retained an attorney, who made various inquiries concerning the alleged debt.  As a result of his efforts,

2

U.S. Equities agreed that the judgment should be vacated.  On or about March 28, 2011, Strumpf applied to New York State Supreme Court, Wayne County, to vacate the judgment and discontinue the action against Plaintiff.

Around this same time, the New York State Attorney General and the New York State Unified Court System conducted an investigation into the fraudulent activities of a process-serving firm known as "Serves You Right" ("SYR") during the period January 1, 2007 to September 30, 2009.  Strumpf had used SYR's services during that period, and on April 29, 2011, Strumpf entered into an "Assurance of Discontinuance" ("AOD") with the New York State Attorney General. *See*, Scher Affidavit [#11], Ex. 5.  The AOD indicated that on a "persistent and repeated basis" during the relevant period, SYR had prepared false affidavits of service, and that Strumpf had used SYR's services on approximately 4,020 occasions, and had obtained default judgments based on those false affidavits.  The AOD did not indicate, however, that Strumpf was aware that SYR's affidavits were false.  Nevertheless, in light of the fact that judgments had been obtained using false affidavits, Strumpf agreed to cooperate in identifying defendants in those cases, to give them an opportunity to have the judgments vacated.

 As mentioned earlier, Strumpf had filed a motion to vacate the judgment against Plaintiff and dismiss the action.  However, Plaintiff opposed Strumpf's attempt to merely discontinue the action, and instead sought to assert her own legal claims against Strumpf, U.S. Equities and Shafran.  In that regard, on or about July 6, 2011, Plaintiff filed an application to set aside the judgment based on fraud, and for permission to file an answer and counterclaims seeking sanctions against Strumpf and U.S. Equities.  Specifically, Plaintiff sought sanctions, including costs and attorney's fees, pursuant to 22 N.Y.C.R.R. § 130-1.1, as well as the opportunity "to assert counterclaims arising from the fraudulent commencement and prosecution of [the] action, and the unlawful enforcement of a void judgment." Scher Aff. [#11], Ex. 3, Hartett Aff. ¶ 38.  In connection with her application, Plaintiff submitted evidence indicating both that Shafran's affidavit of service was fraudulent

3

and that the alleged amount owed was false.  Beyond that, Plaintiff alleged that Strumpf and Shafran regularly used fraudulent affidavits of service to obtain default judgments in other actions:

> In cases filed in upstate counties by Ms. Strumpf on behalf of [U.S. Equities], it is commonplace that 'there is something not right.'  There have been thousands of such cases. . . .  I obtained copies of the Affidavits of Service from a random sample of the aforementioned cases from the Court Clerks. I found that in every case brought by [U.S. Equities], Ms. Strumpf was the attorney and [Shafran] was almost always the process server.  In nearly every such case, [Shafran]  performed 'nail and mail' substitute service. ...  Virtually all of those cases ended in default judgments for U.S. Equities. ...  [T]he conclusion is unavoidable  that Mr. Shafran knowingly signed a false Affidavit of Service in this case, and Ms. Strumpf knowingly submitted false affidavit[s] to this Court. ...  [Snyder] respectfully submits that she should be allowed to appear and assert counterclaims arising from the fraudulent commencement and prosecution of this action, and the unlawful enforcement of a void judgment. . . .  [D]ismissal or discontinuance  . . . might prejudice [Snyder's] right to assert those claims[.]

Scher Affidavit [#11], Ex. 3, Hartnett Supporting Declaration.  Plaintiff further maintained that Strumpf and Shafran should be required to show cause why the court should not impose monetary sanctions, "based on their fraud on the court, misrepresentation, and/or misconduct." *Id*.

In response to that application, Strumpf admitted that Shafran had not served Plaintiff, and that U.S. Equities had been mistaken about the amount of the debt owed, though she claimed that such error was due to a transcription error.  However, Strumpf maintained that she had only recently become aware of those facts.

On January 3, 2012, New York State Supreme Court, Wayne County, denied Plaintiff's motion for leave to assert counterclaims against Strumpf, U.S. Equities and Shafran in that action, vacated the judgment against Plaintiff and dismissed the action. Additionally, Supreme Court directed U.S. Equities to pay attorney's fees and costs to

Plaintiff.

On February 23, 2012, Snyder commenced this action.  The Complaint purports to assert five causes of action: 1) a claim under the FDCPA, based Defendants' use of false and fraudulent means to collect debts; 2) a civil RICO claim, based on a conspiracy between the Defendants to obtain money through fraudulent means involving, *inter alia*, acts of mail and wire fraud; 3) a claim under New York General Business Law § 349, based on Defendants' use of deceptive acts against consumers; 4) a claim for malicious prosecution, based on Defendants' commencement of legal actions that had no probable chance of success; and 5) a claim for attorney misconduct against Strumpf pursuant to New York Judiciary Law § 487, based on Strumpf's alleged misconduct in obtaining fraudulent judgments.  The unsworn Complaint, which purports to assert class-action claims, alleges that any applicable statute of limitations should be deemed to have been tolled by Defendants' concealment of the fraud being committed. *See*, Complaint [#1] at ¶¶ 165-170. In that regard, Snyder maintains that Defendants concealed the fact that Shafran was falsifying affidavits of service, until such fact was revealed by the Attorney General's investigation.

On May 2, 2012, Defendants filed the subject Motion to Dismiss (Docket No. [#10]). The motion makes the following assertions regarding Plaintiff's claims: 1) the FDCPA claims are time-barred under the relevant one-year statute of limitations; 2) the RICO claims must be dismissed due to Plaintiff's failure to file a RICO statement, and because they fail to state an actionable claim; 3) the claims are barred by the *Rooker-Feldman* doctrine; 4) the claims are barred by collateral estoppel; and 5) assuming that the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state-law claims.

Defendants' motion is unopposed, due to a procedural default by Plaintiff.[2]  However, Plaintiff's default is of little importance, since a court cannot grant a motion to dismiss merely

---

[2]See, Docket Nos. [#25] & [#28].

because it is unopposed. *See, McCall v. Pataki*, 232 F.3d 321, 322-323 (2d Cir. 2000) ("We have held with respect to a motion pursuant to Fed.R.Civ.P. 12(c) to dismiss an action on the basis of the pleadings, that "[w]here ... the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute 'default' justifying dismissal of the complaint." *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir.1983). The same principle is applicable to a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss an action on the basis of the complaint alone. Such motions assume the truth of a pleading's factual allegations and test only its legal sufficiency. *See, e.g., De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996). Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

DISCUSSION

*The FDCPA Claims*

Plaintiff maintains that Defendants violated the FDCPA by, *inter alia*, by using false and fraudulent affidavits to obtain a default judgment against her, and by later attempting to use the fraudulently-obtained judgment to extract money from her. Complaint [#1] at ¶ 124.  The activities which resulted in the fraudulent default judgment occurred in 2003 and 2004. Complaint [#1] at ¶ ¶ 16-36, 74-75.  The activity in which Defendants attempted to use the fraudulently-obtained judgment against Plaintiff occurred on or about January 21, 2011, when Defendants served an information subpoena on Plaintiff. Complaint [#1] at ¶ 37.[3] Defendants maintain that the FDCPA claims are barred by the statute of limitations, and

---

[3]Plaintiff's memo of law in opposition to the motion to dismiss, which the Court is not considering because it was untimely, indicates that the latest FDCPA violation occurred when Plaintiff spoke with an employee of Strumpf's law office on around the same time that she received the information subpoena. *See*, Docket No. [#23] at p. 9, ¶ "e..)"; *see, also*, Complaint [#1] at ¶ 45.

therefore ought to be dismissed pursuant to FRCP 12(b)(6).

The general legal principles concerning motions under FRCP 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[4] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

---

[4] The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

7

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).  "The application of this 'plausibility' standard to particular cases is 'context-specific,' and requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*,  712 F.3d 705, 719 (2d Cir. 2013) (citation and internal quotation marks omitted).

A defendant may bring a 12(b)(6) motion to dismiss a claim on statute-of-limitations grounds where, as here, the facts pertinent to that affirmative defense are pleaded in the complaint. *See, Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove. Fed.R.Civ.P. 8(c)(1). However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (citations omitted).

Claims under the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C.A. § 1692k(d) (West 2014).  As the statute indicates, the one-year period runs from the date the defendant committed the violation, not the date of discovery. *See, Thompson v. Ocwen Fin. Corp.*, Civil Action No. 3:13–CV–386 (JCH), 2013 WL 4522504 at *4 (D.Conn. Aug. 27, 2013) ("[T]he FDCPA [is an] "occurrence" statute[ ].  In other words, Thompson's FDCPA . . .  claims accrued on May 11, 2010, at the time of the alleged violations rather than at the time Thompson claims to have discovered them, in December 2012.") (citations omitted).  Plaintiff did not commence this action within one year of the aforementioned occurrences.

As mentioned earlier, though, Plaintiff's Complaint contends that the statute of limitations should be deemed tolled, due to Defendants' fraud.  However, even assuming

*arguendo* that such alleged fraud could toll the FDCPA's statute of limitations, Plaintiff became aware of her claim in January 2011, more than one year before she commenced this action on February 23, 2012.   Specifically, Defendants served Plaintiff with the information subpoena on January 21, 2011, at which time she learned that Defendants had obtained a judgment against her for a debt that she did not owe.   Plaintiff then retained an attorney who, on February  4, 2011, still more than a year before this action was commenced, contacted Strumpf about the "collection efforts."  Complaint [#1] at ¶ 46. Moreover, Plaintiff's attorney's time records, filed in the state court action, indicate that as early as February 4, 2011, he was investigating Defendants' apparent use of fraudulent affidavits of service to obtain the judgment.  *See*, Scher Aff. [#11], Ex. 7 (time entries dated 2/4/11 and 2/9/11).  To the extent that Plaintiff might argue that she did not discover "all" of the details of the alleged fraud until some time later,[5] the Court finds that such fact is immaterial, since more than a year before she commenced this action, she already had enough information to know that Defendants were attempting to collect upon a judgment that they had   wrongfully obtained against her without having afforded her notice or an opportunity to be heard.   In that regard, Plaintiff admits that as of January 2011, she knew both that she did not owe the debt and that she had never been served in the lawsuit.  *See*, Complaint [#1] at ¶ ¶ 45 & Scher Aff. [#11], Ex. 3, Snyder Aff. at ¶ ¶ 5-7.  Therefore, even assuming that the discovery rule applies, Plaintiff nevertheless failed to commence this action within one year of discovery of the FDCPA violations.[6]   Consequently, the FDCPA

---

[5]Plaintiff maintains that the requested tolling period "did not end until July 18, 2011, when she learned the name of the entity responsible for the false affidavit of service." Pl. Memo of Law [#23] at p. 26.  However, the person who filed the false affidavit of service was Shafran, and Plaintiff's attorney's time records indicate that he was aware of that fact as early as February 9, 2011. *See*, Scher Aff. [#11], Ex. 7 (time entry dated "2/9/2011 . . . Researched records re: Shafran Affidavits of Service."). Moreover, even after July 18, 2011, Plaintiff had approximately six months during which she could have asserted timely FDCPA claims prior to the expiration of the one-year limitations period in January 2012.

[6]*See, Sykes v. Mel Harris and Assocs., LLC*, 757 F.Supp.2d 413, 422 (S.D.N.Y. 2010) ("The present action commenced on December 28, 2009.  Because Sykes and Perez allege that they discovered the default judgments entered against them after December 28, 2008, their claims would be timely under equitable tolling.  The Complaint alleges, however, that Graham did receive a copy of the

claims are dismissed as untimely.

*The Civil RICO Claim*

Plaintiff maintains that Defendants violated the Civil RICO statute by participating in an enterprise whose purpose was "to secure default judgments through fraudulent means and to use those judgments to extract money from the Plaintiffs." Complaint [#1] at ¶ 130. However, Defendants contend that the Civil RICO claims must be dismissed because Plaintiff failed to file a RICO Case Statement, as required by Rule 9 of the Local Rules of Civil Procedure.  Additionally, Defendants assert that the Complaint fails to plead a plausible RICO claim.

At the outset, it is undisputed that Plaintiff did not comply with Local Rule 9, which states, in pertinent part:

> REQUIREMENT TO FILE A RICO CASE STATEMENT
> Any party asserting a claim, cross-claim, or counterclaim under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* shall file and serve a "RICO Case Statement" under separate cover. This statement shall be filed contemporaneously with the papers first asserting the party's RICO claim, cross-claim or counterclaim, unless the Court grants an extension of time for filing. A party's failure to file a RICO Case Statement may result in dismissal of the party's RICO claim, cross-claim, or counterclaim. The RICO Case Statement must include those facts upon which the party is relying and which were obtained as a result of the reasonable inquiry required by Federal Rule of Civil Procedure 11. In particular, the statement shall conform to the format and numbering that the Court has adopted by Standing Order No. 22.

Local Rule of Civil Procedure 9.  Even if the Court were to consider Plaintiff's untimely papers submitted in opposition to Defendants' motion to dismiss, they do not contain any discussion or explanation concerning such failure.  Consequently, the RICO claims are dismissed based on Plaintiff's failure to comply with Local Rule 9.

---

summons and complaint by mail from Mel Harris, LLC sometime before a default judgment was entered against her, and thus it fails to allege exercise of due diligence on her part.").

Defendants also maintain that the RICO claims fail on their merits, and the Court agrees.   In that regard, Plaintiff maintains that Defendants engaged in a racketeering enterprise and conspiracy, in violation of 18 U.S.C. § 1962(c) & (d). *See*, Complaint [#1] at ¶ ¶ 133, 144.  Those sections of law state:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C.A. § 1962(c) & (d) (West 2014).  "'Racketeering activity' is in turn defined to include a litany of so-called predicate acts, including 'any act which is indictable' under the mail and wire fraud statutes." *In re U.S. Foodservice, Inc. Pricing Litigation*, 729 F.3d 108, 117 n. 5 (2d Cir. 2013) (citing 18 U.S.C. § 1961(1)(B)).   "To satisfy the 'pattern of racketeering activity' requirement, the statute requires 'at least two acts of racketeering activity ... the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.'" *U.S. v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012) (citing 18 U.S.C. § 1961(5)).

In this case, Plaintiff alleges that Defendants engaged in acts of mail fraud and wire fraud.  More specifically, the Complaint states, in pertinent part:

> Defendants, acting individually and as part of the Enterprise, have used the mails and wires and have caused the mails and wires to be used, or reasonably knew the mails and wires would be used, in furtherance of their fraudulent scheme.  Specifically:

>> a.) On or about June 22, 2004, Defendants used the mails to deliver a proposed default judgment and affidavit to the Wayne County Clerk.

>> b.) On or about October 5, 2006, Defendants used the mails to deliver

two fraudulent affidavits to the Clerk for the Geneva City Court.

c.) On or about September 4, 2003, Defendants used the telephone in an attempt to collect a debt from Snyder.

Defendant used the mails and wires in connection with every default judgment that they have fraudulently obtained, and each use of the mails and wires furthered their fraudulent scheme.

Upon information and belief, each Defendant had specific actual knowledge that the mail and wires were being used in furtherance of the fraudulent purpose of their Enterprise.  In fact, under the New York Civil Practice Law and Rules, use of the mail was a requirement for substituted service and 'nail and mail,' methods of service consistently cited in the affidavits of service relied upon by the Defendants.

Further, Defendants consistently used the mail to file all of the required pleadings, exhibits and documents required to obtain each of the default judgments obtained against the Plaintiffs.

Complaint [#1] at ¶ ¶ 136-139.

Defendants contend that the foregoing acts, of using the mail to file and serve litigation documents, cannot, as a matter of law, constitute predicate acts under the RICO statute.  There are, in fact, a significant number of decisions, in this Circuit and in other Circuits, which hold, in the context of Civil RICO claims based on fraudulent litigation, that a defendant's use of mail and wire to conduct allegedly fraudulent "litigation activities" is insufficient to establish predicate acts of racketeering. See, *Daddona v. Gaudio*, 156 F.Supp.2d 153, 161-162 (D.Conn. 2000) ("In his amended RICO Case Statement, Daddona characterizes the pattern of racketeering as follows: 'The pattern of racketeering activity carried on by the defendants is to engage in extensive litigation filing of false documents and affidavits which is a pattern . . . defendants have engaged in similar conduct in other litigation[.]'  These allegations at best amount to a vague abuse of process or malicious prosecution claim.  Courts have found that allegations of malicious prosecution or abuse of

process do not, on their own, suffice as predicate acts for a RICO violation.") (collecting cases; citation and internal quotation marks omitted); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 -268 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."); *Gabovitch v. Shear*, 70 F.3d 1252 (table), 1995 WL 697319 at *2 (1st Cir. Nov. 21, 1995) ("Numerous courts have held that the filing of litigation-no matter how lacking in merit - does not constitute a predicate racketeering act of extortion. ... Plaintiff's mail fraud claim [involving the mailing of fraudulent affidavits to a court] likewise proves deficient."); *U.S. v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("Serving a motion by mail is an ordinary litigation practice. A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility. ... [T]hese courts have rejected this mail-fraud theory on policy grounds, recognizing that such charges are merely artfully pleaded claims for malicious prosecution.") (collecting cases, citation and internal quotation marks omitted); *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F.Supp.2d 153, 174 (E.D.N.Y. 2010) ("[T]he Congressional intent in enacting RICO does not square with the absurd consequences and contraventions of well-settled public policy which would inevitably result from allowing RICO predicate acts to be based upon the type of malicious prosecution claims alleged here."), *aff'd*, 443 Fed.Appx. 582 (2d Cir. 2011);[7] *Weaver v. James*, No. 10 Civ. 6609 (NRB), 2011 WL 4472062 at *4 (S.D.N.Y. Sep. 27, 2011) (Observing that attempts to "characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes" have been rejected by courts); *Chandler v. Suntag*, 2011 WL 2559878 at *6-7 (D.Vt. 2011) ("In general, litigation activities do not 'properly form the basis for RICO predicate acts.'") (*quoting Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d

---

[7]In *Curtis*, the alleged predicate acts of mail fraud consisted almost entirely of the defendants having mailed letters, motions, affidavits, notices and other litigation-related documents to courts and opposing parties. *See, Curtis*, 758 F.Supp.2d at 169-170.

at 171); *Luther v. American Nat. Bank of Minnesota*, Civ. No. 12–1085 (MJD/LIB), 2012 WL 5471123 at *6 (D.Minn. Oct. 11, 2012) ("Even if any litigation documents that were filed by the Defendant's counsel in the state court proceedings were false or fraudulent, as numerous courts around the country have held, such documents, generally, cannot be the basis of a RICO claim.").

The Court sees no great difference between the cases cited above and the present case. Of course, the instant case alleges that defendants conducted fraudulent litigation on a much grander scale, in terms of number of lawsuits, than was present in the cases cited above. Additionally, the litigation activities at issue in this case were allegedly conducted behind Plaintiff's back for the most part, although the filings were all a matter of public record.[8] However, the Court is not persuaded that these facts compel a different outcome here, since, in all of the cases, including this one, the gravamen of the allegations is the same, namely, that the defendants pursued fraudulent litigation, using fraudulent affidavits and filings, in an attempt to obtain money or property to which they were not entitled. In the Court's view, the reasons articulated by other courts, as to why litigation activities should not be actionable under the Civil RICO statute, are equally applicable here.

The Court has examined the case of *U.S. v. Eisen*, 974 F.2d 246 (2d Cir. 1992), in which the Second Circuit reviewed a group of defendants' convictions under the RICO criminal statue. The defendants' scheme involved the prosecution of a significant number of fraudulent personal injury claims, in which, in addition to filing fraudulent lawsuits, they pressured witnesses to change their testimony, bribed witnesses to either testify falsely or not testify, and fabricated physical evidence. On appeal, the defendants argued that the mail fraud charges against them, which involved perjury, should not have been allowed to establish RICO predicate acts, since Congress did not included perjury as one of the

---

[8]The *allegations* concerning Defendants are extremely serious and troubling. The Court's ruling here will not deprive Plaintiff of her day in court. The Complaint [#1] contains, *inter alia*, a malicious prosecution claim that is essentially redundant of the RICO claim, and Plaintiff will be able to pursue that claim in New York State Court.

enumerated RICO predicate offenses.  However, the Circuit Court disagreed, and stated, in pertinent part:

> Congress did not wish to permit instances of federal or state court perjury as such to constitute a pattern of RICO racketeering acts. Apparently, there was an understandable reluctance to use federal criminal law as a back-stop for all state court litigation. Nevertheless, where, as here, a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a RICO predicate act cannot be suspended simply because perjury is *part of the means* for perpetrating the fraud. We do not doubt that where a series of related state court perjuries occurs, it will often be possible to allege and prove both a scheme to defraud within the meaning of the mail fraud statute as well as the elements of a RICO violation. But in such cases, it will not be the fact of the perjuries alone that suffices to bring the matter within the scope of RICO. In any event, we cannot carve out from the coverage of RICO an exception for mail fraud offenses that involve state court perjuries.

*Id*. at 254 (emphasis added).  The Court, though, finds that *Eisen* is inapplicable here, for the same reasons articulated in *Nakahara v. Bal*, No. 97 Civ. 2027 (DLC), 1998 WL 35123 at *9 (S.D.N.Y. Jan. 30, 1998).   More specifically, Plaintiff's claim arises from the fact of the bogus lawsuit against her, and from Defendants' alleged use of perjured documents to obtain a default judgment against her.  The alleged racketeering activity is the fraudulent lawsuit. *See, Daddona*, 156 F.Supp.2d at 164 ("Here, as in *Nakahara*, Daddona asserts no claims of extortion or any other racketeering activity apart from mail and wire fraud.  Unlike *Eisen*, there is no claim here that the underlying litigation . . . is part of any larger scheme to deprive Daddona of his property.").  The fact that Plaintiff has captioned this action as a proposed class action, and has alleged that Defendants acted in identical fashion toward many other persons, does not, in the Court's view, permit the denial of Defendants' motion.

On this same point, the Court is also aware of the decision in *Sykes v. Mel Harris and Associates, LLC*, 757 F.Supp.2d 413 (S.D.N.Y. 2010), which, on facts strikingly similar to those presented here, found that the plaintiff's complaint stated a claim under the Civil RICO

15

statute.  There is no indication, however, that the particular issue being discussed here was raised in *Sykes*.  In that regard, the *Sykes* decision contains no discussion as to whether the defendants' fraudulent litigation activities qualified as predicate acts under RICO, in light of the line of cases represented by *Daddona* and the other cases cited above, nor does the decision mention *Eisen*.  Therefore, while the *Sykes* decision reaches the result that Plaintiff wants, it does not explain how or why this Court could reach the same result, in light of established authority.

Accordingly, the Court finds that the Complaint fails to adequately plead that Defendants engaged in a pattern of racketeering activity, and the RICO claims are dismissed.

### The State Law Claims

Federal subject-matter jurisdiction in this action was based on the FDCPA and RICO claims, which the Court is dismissing.  The Court declines to exercise supplemental jurisdiction over the remaining supplemental state-law claims, pursuant to 28 U.S.C. § 1367(c).  Plaintiff is advised that the statute of limitations governing her state-law claims will be tolled for a period of thirty days, pursuant to 28 U.S.C. § 1367(d). *See, Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir .1998) ("Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court.").

CONCLUSION

Defendants' motion [# 10] to dismiss the Complaint is granted, and this action is dismissed. The Clerk of the Court is directed to close this action.

Dated: Rochester, New York
        January 27, 2014        ENTER:

                                /s/ Charles J. Siragusa
                                _____

                                CHARLES J. SIRAGUSA
                                United States District Judge